UNITED STATES FEDERAL DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Elizabeth Ann Yoder** )<br>**126 Kinsinger Road** )<br>**Meyersdale, PA 15552** )<br>**Plaintiff,** )<br> )<br>   **vs.** )<br> )<br>**Architect of the Capitol** )<br>**U.S. Capitol, Room SB-16** )<br>**Washington, DC 20515.** )<br>**Defendant.** | **Case No:** ___23-2214___<br><br>**For claims of Discrimination and Retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C §601 et seq.**<br><br>**JURY DEMAND.** |

### Introduction

The Plaintiff Elizabeth Yoder brings this action for age discrimination and retaliation against the Architect of the Capitol (AOC). Yoder is a 56-year old Caucasian female. She has been employed with the AOC since 2011 to the present. In 2017 she was chosen over 450 to 470 other candidates to be featured in the annual AOC Performance and Accountability Report. She has consistently earned stellar performance reviews.

Despite her numerous accomplishments at the AOC, younger and less qualified persons, continue to be selected for positions at the AOC. Yoder alleges that she is not being chosen on the basis of age and in retaliation of her prior protected activities. Additionally, on at least three occasions, the reasons offered by the AOC for Yoders's non-selection are pre-textual.

Consequently, an action for the violations of the Age Discrimination in Employment Act (ADEA) now follows.

### Part I. Parties

1. Yoder is presently a 56-year old Caucasian female. She has been employed with the AOC since 2011. She is presently employed as a "Writer-Editor," grade GS-13.

Yoder is an employee under 29 U.S.C. §621 *et seq*., of the Age Discrimination in Employment Act of 1967 (ADEA).

2. The Architect of the Capitol (AOC) is a federal agency. The AOC is responsible for the maintenance, operation, development and preservation of the Capitol complex. The AOC is an employer under 29 U.S.C. §621 *et seq*., of the ADEA.

## Part II. Exhaustion of Administrative Remedies

3. On June 1, 2023, the Plaintiff exhausted her administrative remedies by filing her claims for ADEA discrimination and retaliation with the Office of the Congressional Workplace Rights (OCWR) for claims under the Congressional Accountability Act (CAA), 2 U.S.C. §1301 *et seq*. The CAA makes the ADEA applicable under 2 U.S.C. §1302.

4. On June 28, 2023, the OCWR issued its notice of the right to sue, with instructions to file a complaint in the U.S. Federal District Court within 70-days of her filing with OCWR.

5. This action is being filed within 70-days of Yoder's June 1, 2023, filing with the OCWR.

## Part III. Subject Matter Jurisdiction & Venue

6. This Court has jurisdiction over her federal claims under 28 U.S.C §1331.

7. Venue is also proper in the District of Columbia, because the Plaintiff is employed in Washington D.C.

## Part IV. Statement of Facts

8. The Plaintiff, Elizabeth Ann Yoder, is a 56-year-old Caucasian female employed as a GS-13 Writer-Editor in the Senate Office Buildings jurisdiction of the Architect of the Capitol (AOC).

9. As the jurisdiction's Writer-Editor, Yoder currently reports to Margaret Bergamini, Business Operations Manager in the Senate Office Buildings jurisdiction. However, Yoder's official position description states that she is to report directly to the Senate

Superintendent, which she did until April 2019, when former Senate Superintendent Takis Tzamaras had to suddenly leave the position.

10. In 2011, Yoder began her employment at the AOC. Yoder initially assisted the Capitol Visitor Center (CVC) in a part-time, volunteer capacity. She then spent approximately five months volunteering in a full-time role in the CVC Office of Special Events. She was then offered a temporary GS-7 Administrative Support Specialist position with the CVC's Gift Shop Division, a position she held for over 19 months prior to her current role.

11. Yoder is presently the "Writer-Editor," with an annual salary of $130,683 plus overtime and performance bonuses. Yoder has 8 ½ years of experience as a "Writer-Editor."

12. Yoder previously worked as a graphic designer and as a communications instructor at both the high school and college levels before transitioning to Capitol Hill. She also has experience in construction writing and specialized knowledge of the construction industry from years of assisting with her family's construction business and is a Certified Professional Photographer.

13. Yoder has earned an "Outstanding" rating and a monetary performance award for each annual performance evaluation since coming to the AOC.

14. She has been the only Senate jurisdiction employee selected for the Excellence in Government Fellows program in over 20 years. In 2017, previous Senate Superintendent Takis Tzamaras also selected Yoder--over 450-470 other employees in the Senate Office Buildings jurisdiction--to be featured in the annual AOC

Performance and Accountability Report as the Senate jurisdiction employee living out the AOC mission to "Serve, Preserve, and Inspire."

**Protected Activities**

15. In August 2021, Yoder requested a meeting with new Senate Superintendent Stephanie Jones about workplace discrimination.

16. In the meeting with Jones, Yoder informed Jones that the Deputy Superintendent Lawrence Barr and AOC Communications and Congressional Relations (now Legislative Affairs, or LPA) staff of <u>age discrimination</u>. Yoder informed Jones that Barr and the LPA staff were working together to informally take a significant portion of her job responsibilities away. Yoder alleges that they did this by creating the original Legislative Affairs Specialist (LAS) position focused on the Senate to formally take Yoder's job responsibilities away and by hiring Erika Northington, a woman in her mid-30s, for the LAS position.

17. Northington had begun her professional career after graduating from law school in the summer of 2014.

18. Yoder, who holds two bachelor's degrees and a master's degree, has been employed at the GS-13 level with the AOC since December 2014, and has over 30 years of professional experience.

19. As Yoder shared her allegations of age discrimination, including her concerns that key parts of her job duties had been eliminated or reassigned, Stephanie Jones took notes and stated that she would think through possibilities to provide Yoder with additional job responsibilities to offset those duties that were reassigned or eliminated.

20. To that end, Jones specifically mentioned that she could see Yoder assisting with research and proposal to develop an apprenticeship program at the agency. However, Jones only met with Yoder once about the apprenticeship program, then gave the apprenticeship responsibilities to Margaret Bergamini, who is now Yoder's boss. Bergamini assumed the new Business Operations Manager position in May 2022.

21. Later in August 2021, Jones held an in-person meeting with Lawrence Barr. Barr was Yoder's direct boss at the time of the August 2021 meeting. Barr also told Yoder that she needed to copy him on all of her emails to Jones, since, in Barr's words, "I need to know what you're telling my boss."

22. Jones never discussed the job issues further with Yoder until May 2022. Yoder however would continually mention to Jones her (Yoder's) concern regarding her (Yoder's) position.

23. In May 2022, Deputy Superintendent Lawrence Barr downgraded Yoder on two of five performance elements in her annual performance evaluation without a good explanation. Yoder filed and won a formal grievance which restored both performance elements to "Outstanding," giving Yoder an "Outstanding" performance rating in all five performance areas.

24. Just before Yoder filed the grievance concerning her evaluation, Barr was removed from his role in the Senate Office Buildings jurisdiction and transferred to another part of the agency. Barr was allegedly removed because a female staffer on the Senate Committee on Rules and Administration was upset with Barr's treatment of her and demanded that he (Barr) be removed from the Senate.

25. When Stephanie Jones, the Senate Superintendent, notified Yoder that she had won her grievance, Jones also told Yoder, "You're never going to get any farther here. You're like Nadine [Edwards]. If she wants to advance, she's going to have to leave the agency."

26. While the grievance was in process, Jones and Christine Leonard, the LPA Director, were also actively working to try to take even more of Yoder's duties away by developing the position description for a new GS 13/14 "Project Manager" position focused on the Senate. When Jones worked on the job description for the new position, she started with a "Communications Specialist" description, then deliberately made the position responsibilities more vague, stating to LPA Director Christine Leonard in an email, "…we are trying to make it sound like a generic position that would be in the Senate jurisdiction vice [sic] the more accurate description that you would submit [if] it was part of an LPA budget request."

27. Although the AOC worked diligently to streamline and reduce the FY-2024 budget requests for the agency, in March 2023, the AOC formally requested the new Projects Manager position for the Senate in the FY-2024 budget request to Congress.

28. On June 23, 2022, Yoder applied for the GS 12/13 Legislative Affairs Specialist (LAS) vacancy focused on the Senate, a position which was limited to current AOC employees. Yoder believes that she may have been the only qualified applicant for the position.

29. However, the AOC refused to even interview Yoder for the job, even though the position was a lateral opportunity, rather than a promotion. Yoder had also previously

performed many of the functions of the LAS positions, as the position description for the LAS position mimicked her current position.

30. On July 7, 2022, two days after the internal Legislative Affairs Specialist position closed, the AOC re-posted the same LAS position to the general public.[1]

31. Yoder was again not interviewed for the position, even though AOC policy states that, if interviews are conducted, that the top five internal candidates are to be interviewed for the position.

32. On December 5, 2022, Yoder received an email from the agency informing her that she had not been selected for the external LAS position.[2]

33. On April 1, 2023, Yoder also received an email from the agency informing her that she had not been selected for the internal LAS position.[3]

34. As of May 18, 2023, Yoder's USAJOBS.gov account still shows both the internal and external LAS positions as "reviewing applications."

35. The AOC ultimately selected Jared Pfliger for the external LAS position. Pfliger is in his early- to mid-thirties and had previously served in two junior-level Senate staff positions (Legislative Correspondent and Deputy Press Secretary).

36. Pfliger previously also held communications and government affairs positions with the American Sportfishing Association and the American Association of Colleges of Nursing. Pfliger had little, if any, direct experience with construction, facility management, architectural, and/or historic preservation issues.

---

[1] Vacancy announcement number: LPA-2022-312.
[2] Id.
[3] Vacancy Announcement Number LPA-2022-287

37. Sometime in fall 2022, in retaliation of Yoder's prior protected activities, the Senate Superintendent and LPA staff also took away Yoder's responsibility for writing Senate trade shop-related articles for *Tholos,* the AOC employee magazine.[4]

38. Previously, Yoder had been the main point of contact for *Tholos* in the Senate Office Buildings jurisdiction, and, over the past several years, had written several Senate-related articles for the publication. Her articles were always well received.

39. However, the AOC gave the "Senate Spotlight" feature assignment in the December 2022 publication (Volume 24) to Madeleine Lucchetti, an AOC contractor in her mid-20s.[5] Lucchetti had a limited knowledge of Senate jurisdiction staff and processes and the assignment required the agency to spend additional government funds for a task included in Yoder's Writer-Editor position. While the AOC had previously taken Senate-focused communications responsibilities from Yoder and given them to the Legislative Affairs Specialist position focused on the Senate, with the transfer of the *Tholos* writing assignment, the AOC had now started intentionally stripping away Yoder's employee-focused communications responsibilities.

40. On February 10, 2023, Yoder interviewed for another lateral GS 12/13 Legislative Affairs Specialist position (Vacancy Announcement LPA-2023-032) which she was not selected for. The person hired for the position, Benjamin Gruenbaum, who is approximately 15 years younger than Yoder, has prior congressional and legislative affairs experience, but had been out of these roles for over 10 years immediately prior to being selected for the position.

---

[4] https://www.aoc.gov/what-we-do/publications/tholos-magazine
[5] https://www.lucchettiwrites.com/

41. In March 13, 2023, LPA Deputy Director Samuel Franco met with Yoder and provided feedback for Yoder's non-selection. Franco stated that Yoder wasn't selected for the job because she lacked legislative affairs experience.

42. Yoder contends that Franco's reasons for her <u>non-selection are pre-textual</u> because Yoder has a substantial amount of legislative affairs experience. Yoder writes a weekly email newsletter for Senate offices, writes and edits Senate jurisdiction project paperwork for submittal to the Senate Committee on Rules and Administration and the Senate Committee on Appropriations, writes and edits budget paperwork for the Senate jurisdiction's $278M budget, works directly with Senators and senior Senate staff to coordinate Senate election-year office moves, and has developed communications plans for the largest two renovation projects undertaken by the Senate jurisdiction over the past eight years.

43. In spring 2023, while discussing Yoder's mid-year performance review, her supervisor, Margaret Bergamini, shared that Stephanie Jones, Senate Superintendent, and Eric Swanson, Deputy Superintendent, had insisted that Bergamini remove all references to Yoder's photography work from her mid-year review or Jones and Swanson would not sign off on it, even though Yoder's position description directly mentions both visual design and Photoshop tasks.

44. Yoder feels that AOC continues to strip away her duties and assignments in retaliation for her prior protected activities. The AOC has not updated Yoder's position description to reflect the changes to her job assignment or given significant new tasks and responsibilities to Yoder to replace those she has lost, even though AOC policy at the time of her OWCR claim filing dictated that the

agency update an employee's position description within 30 days of any change in job responsibilities (AOC Order 430-1.)

45. In a July 11, 2022, meeting, Yoder's supervisor, Margaret Bergamini, stated that she was working with staff in AOC's Human Capital Management Division to edit the position descriptions of Yoder and two of her co-workers (both of which were approximately 18 months from retirement at the time). However, Bergamini has never mentioned anything further about revising Yoder's position description and, when the agency updated AOC Order 430-1 in June 2023, they removed the 39-day time limitation for updating an employee's position description following changes in job responsibilities.

46. On April 24, 2023, Yoder interviewed for a GS-14 Senior Communications Specialist position.

47. On May 24, 2023, Samuel Franco, LPA Deputy Director, emailed Yoder that she had not been selected for the position.

48. On June 9, 2023, Franco provided Yoder with his feedback as to why Yoder was again not selected for the Senior Communications Specialist position. Franco suggested that Yoder find coursework to improve her answer to the interview question on "experience with speechwriting for a principal."

49. Yoder contends that <u>this reason for her non-selection is also pretextual</u>.

50. Yoder informed Franco, that while she was certainly interested in taking courses to further her professional development, given her experience teaching speech communications at the college level, she didn't honestly believe that completing

single-day or weekend courses in speechwriting would significantly add to her speech communications experience.

51. When Yoder asked for additional feedback on ways to improve her candidacy for future positions, Franco offered no further suggestions.

52. Yoder also asked when LPA planned to develop a Senior Communications Specialist position focused on the Senate comparable to the current vacancy focused on the House office buildings. Franco denied that the current position was focused on the House, stating that the vacancy was for a general communications position. However, the vacancy announcement clearly states that the position was intended to focus on communications for the House office buildings.

53. When Yoder expressed concern that she had applied for 13 LPA positions and never received a second interview for any of them, Franco responded that he wasn't focused on all of the positions, just on the one they were meeting to discuss.

54. On June 28, 2023, Yoder interviewed for a GS-14 Senior Legislative Affairs Specialist (Appropriations) position.

55. On July 19, 2023, Franco again emailed Yoder, and informed Yoder that she had not been selected for the position.

56. On July 21, 2023, another feedback session was held with Yoder as to the reasons for her non-selection. Once again, Franco suggested that Yoder should take a <u>one-day</u> appropriations law training class from GAO or a <u>two-day</u> appropriations law course from Graduate School USA to help her in future vacancies.

57. Once again, <u>Yoder believed that Franco's reasons for her non-selection were pre-textual</u>. Yoder informed Franco that, while she was certainly interested in taking courses to continually improve, she felt that taking a one- or two-day training wouldn't significantly change her experience for the position, especially since a person could easily take those courses <u>after being hired for the job</u>. Yoder also stated that she didn't feel that the AOC was giving her credit for the experience that she already had with the agency.

58. Yoder then stated that she this was the 14th LPA position that she was qualified for within approximately the past three years, and she had never been given a second interview for any of the vacancies, which meant that she had never been seriously considered for any of the positions, even though she consistently got outstanding performance evaluations and would bring her record of outstanding performance to a new position. Franco then responded that every candidate is seriously considered for the positions, and LPA spends hours going through resumes, conducting interviews, and working to get the best candidate for each position.

59. Yoder then told Franco, "given that I am a <u>member of a protected class</u> which is applicable in this case, and I've been a whistleblower with the agency [concerning her prior complaints of discrimination], it's especially concerning that, in two of the positions I was highly qualified for, the agency didn't select anyone for the vacancies and simply re-posted them."

**60.** To which Franco replied by repeating his previous answers, that LPA spends hours going through resumes, conducting interviews, and working to get the best candidate for each position.

**61.** On July 25, 2023, Yoder interviewed for an additional GS-14 Senior Communications Specialist position and is still awaiting the agency's decision on that vacancy.

## Part V. Causes of Action.

**Count I. Discrimination under the Age Discrimination in Employment Act (ADEA).**

**62.** Plaintiff reincorporates by reference all the allegations above.

**63.** The ADEA makes it unlawful to discriminate on the basis of age.

**64.** The Plaintiff in here has repeatedly filed for positions within the AOC and has not been selected. At least for 3-positions, the reasons offered by the AOC are pre-textual. The persons who were chosen for these positions were also younger than the Plaintiff.

**65.** Defendant AOC and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of her age.

**66.** Defendant AOC knew or should have known of the types of discrimination that Plaintiff suffered.

**67.** Defendant's conduct has been intentional, deliberate, willful and in callous disregard of Yoder's rights for claims under the ADEA.

**68.** Defendant AOC's acts of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, physical harm, embarrassment, humiliation and indignity.

69. This intentional, reckless and/or willful discrimination on the part of Defendant AOC constitutes a violation of Plaintiff's rights under the ADEA.

70. By reasons of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies under the ADEA.

### Count II. Retaliation under the ADEA

71. Plaintiff reincorporates by reference all the allegations above.

72. At all pertinent times Defendant AOC was an employer subject to the provisions of the ADEA and the CAA.

73. At all pertinent times, Plaintiff was entitled to protection under the ADEA and the CAA

74. The ADEA and the CAA makes it an unlawful employment practice to retaliate against an employee.

75. Plaintiff engaged in protected activity and opposition to practices made unlawful under the ADEA and the CAA.

76. As a result of her protected activities, the AOC retaliated against the Plaintiff by (i) failing to interview and/or promote the Plaintiff for the vacant positions of the Legislative Affairs Specialists, and other jobs applied by the Plaintiff, including but not limited to the Senior Communications Specialist; (ii) taking away her responsibility to write an article for the December 2022 edition for the AOC's *Tholos* magazine and providing it to a 20-something AOC contractor Madeline Luchetti; and (iii) stripping away of her duties. These losses of promotions have affected the Plaintiff monetarily.  The Plaintiff's duties have also been reassigned.

77. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by Defendant AOC. The Defendant was also aware of her protected activities.

78. Defendant's acts of retaliation caused Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

79. This intentional, reckless, and/or willful retaliation by the part of Defendant AOC constitutes a violation of Plaintiff's rights under the ADEA and CAA.

80. By reason of Defendant AOC's retaliation, Plaintiff is entitled to all legal and equitable remedies under the ADEA and CAA.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Elizabeth Yoder prays as follows:

    a. That this Court enter judgment against the Defendant Architects of the Capitol;

    b. That the Court award Plaintiff damages in the amount equal to all of their accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, and compensatory and emotional damages for the financial, and emotional harm caused by Defendant AOC; including pre-judgment and post judgment interest and any other damages permitted under the ADEA, in an amount to be determined by this Court and the jury;

    c. That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees and expert fees.

## Part VI.

**Jury Demand.**

Plaintiff requests a trial by jury on all counts.

Respectfully Submitted,

<u>/s/A.J Dhali, Esq.</u>

DC Bar No. 495909
Dhali PC
1629 K. Street. NW. Suite 300.
Washington D.C. 20036
Telephone: (202) 556-1285
Facsimile: (202) 351-0518
ajdhali@dhalilaw.com
*Attorney for Plaintiff Elizabeth Yoder*

*Monday July 31, 2023*

Page 16 of 16
Yoder v. AOC