UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH ANN YODER,

    *Plaintiff*,

v.

ARCHITECT OF THE CAPITOL,

    *Defendant*.

Civil Action No. 23-2214 (TJK)

## MEMORANDUM OPINION AND ORDER

Elizabeth Ann Yoder is a 56-year-old woman employed as a writer-editor by the Architect of the Capitol. She alleges that her employer discriminated against her based on her age and retaliated against her for engaging in protected activity. Defendant now moves to dismiss, arguing that the Court lacks jurisdiction over some of Plaintiff's claims and that she failed to state a claim for the others. For the reasons explained below, the Court will grant in part and deny in part Defendant's motion.

**I.   Background**

    **A.   Factual Background**

Plaintiff is a 56-year-old woman who works as a GS-13-grade "Writer-Editor" for the Architect of the Capitol ("AOC"), an agency "responsible for the maintenance, operation, development and preservation of the Capitol complex." ECF No. 9 ¶¶ 1–2. In her operative complaint, she alleges that she has excelled in this role, receiving ratings of "Outstanding" in each of her annual performance evaluations. *Id.* ¶ 13. Despite those reviews, she alleges that, in August 2021, she requested a meeting with Senate Superintendent Stephanie Jones to discuss allegations that her

superiors had taken a significant portion of her job responsibilities away from her because of her age. *Id.* ¶¶ 15–16.

Plaintiff alleges that, after this meeting, the discrimination continued and retaliation began. For example, her direct supervisor, Deputy Superintendent Lawrence Barr, "downgraded [Plaintiff] on two of five performance elements in her [2022] annual performance evaluation without a good explanation"—an action that was eventually reversed following a formal grievance. ECF No. 9 ¶ 23. She also alleges that Jones and another AOC employee were "actively working to try to take even more of [Plaintiff]'s duties away by" creating a new position that would encroach on her responsibilities. *Id.* ¶ 26. And "[s]ometime in fall 2022," Jones purportedly "took away [Plaintiff]'s responsibility for writing Senate trade shop-related articles" in the AOC employee magazine. *Id.* ¶¶ 37, 39.

Plaintiff also alleges that AOC staff refused to hire or even interview her for several positions she applied for between 2022 and 2023. Six positions are relevant for purposes of resolving Defendant's motion. First, Plaintiff alleges that, on June 23, 2022, she applied for a "GS 12/13 Legislative Affairs Specialist (LAS) vacancy focused on the Senate, a position which was limited to current AOC employees" and which Plaintiff calls the "internal LAS position." ECF No. 9 ¶¶ 28, 33 (emphasis omitted). She was not called for an interview. *Id.* ¶ 29.

Second, Plaintiff alleges that, on July 7, 2022, the AOC opened the internal LAS position to the public (purportedly creating a new position which Plaintiff calls the "external LAS position"); again, she was not interviewed. ECF No. 9 ¶¶ 30–32 (emphasis omitted). The AOC eventually hired Jared Pfliger for the position, a non-AOC employee who Plaintiff alleges was about 20 years younger than Plaintiff. *Id.* ¶ 35.

Third, Plaintiff identifies "another lateral GS 12/13 Legislative Affairs Specialist position," which she allegedly interviewed for on February 10, 2023 (the "2023 LAS position"). ECF No. 9 ¶ 40. But on March 13, 2023, AOC Deputy Director Samuel Franco met with Plaintiff to explain why the AOC had chosen not to hire her. *Id.* ¶ 41. Franco explained that Plaintiff "lacked legislative affairs experience," so they hired Benjamin Gruenbaum instead, a man 15 years younger than Plaintiff but who had "prior congressional and legislative affairs experience." *Id.* ¶¶ 40–41.

Fourth, Plaintiff alleges that, on April 24, 2023, she "interviewed for a GS-14 Senior Communications Specialist position" (the "SCS position"). ECF No. 9 ¶ 46. But on May 24, 2023, Deputy Director Franco emailed Plaintiff that she had again not been selected. *Id.* ¶ 47. Instead, Plaintiff alleges, "[u]pon information and belief," that the position went to Erin Nelson, a woman "in her 30s or 40s." *Id.* Franco eventually explained that the AOC did not select Plaintiff because she needed "to improve her answer to the interview question on 'experience with speechwriting for a principal'" by, for example, finding coursework on speechwriting. *Id.* ¶ 49.

Following this rejection, Plaintiff alleges that, on June 1, 2023, she filed an administrative charge asserting discrimination and retaliation claims against the AOC with the Office of Congressional Workplace Rights ("OCWR"). ECF No. 9 ¶ 48. Later that month, she interviewed for a fifth position, "a GS-14 Senior Legislative Affairs Specialist (Appropriations) position" (the "SLAS position"), for which she was non-selected on July 19, 2023. *Id.* ¶¶ 55–56. Instead, that position allegedly went to "Mark Caruso, a male in his 30s." *Id.* ¶ 56. Deputy Director Franco again provided Plaintiff with feedback, this time recommending that she take a short one-to-two-day training course on appropriations law. *Id.* ¶ 57.

Finally, Plaintiff alleges that, on July 25, 2023, she interviewed for another GS-14 Senior Communications Specialist position (the "July SCS position"). ECF No. 9 ¶ 66. But the AOC hired Todd Andrews, whom Plaintiff only describes as "a male candidate." *Id.*

Following these events, Plaintiff contends that, on October 21, 2023, she "filed another [administrative charge] with the OCWR for discrimination and retaliation for acts occurring on or after April 2023." ECF No. 9 ¶ 6.

### B.     Procedural Background

On July 31, 2023, Plaintiff filed this suit, invoking the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.*, which extends the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, to certain congressional employees like her. *See* 2 U.S.C. §§ 1301(a)(3)(F), 1302(a)(4); ECF No. 1. She then amended her complaint on February 12, 2024, bringing two counts. ECF No. 9. In Count I, she alleges that the AOC violated the ADEA (through the CAA) by not selecting her for the "Senior Communications Specialist position and the Legislative Affairs Specialist position" for which she applied in 2023. *Id.* ¶ 69. She alleges she was "eminently qualified for these positions" and that the AOC's explanations for why it refused to select her were pretexts for unlawful age discrimination. *Id.* ¶ 70.

In Count II, Plaintiff claims that the AOC retaliated against her. She alleges she engaged in protected activity in August 2021, when she first met with Jones, and again in June 2023, when she filed an administrative charge with the OCWR. ECF No. 9 ¶ 80. According to Plaintiff, AOC employees retaliated against her "by failing to interview and/or promote [her] for the vacant positions at the AOC in 2023," "by taking away her responsibility to write an article" for the AOC's employee magazine, and by "stripping away" many of her other responsibilities. *Id.* ¶¶ 81–82.

4

Defendant now moves to dismiss for lack of jurisdiction and for failure to state a claim. ECF No. 12.[1]

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), Plaintiff has the burden to establish the Court's subject-matter jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). In evaluating a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant[] [P]laintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted). But the Court may also look beyond the pleadings to determine whether it has jurisdiction over a case or claim. *Bailey v. Wash. Metro. Area Transit Auth.*, 696 F. Supp. 2d 68, 71 (D.D.C. 2010). Thus, "[w]hen necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when she pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[1] Defendant originally moved for summary judgment in the alternative, ECF No. 12 at 1, but later withdrew that aspect of its motion, ECF No. 15 at 6.

**III.     Analysis**

To repeat, Plaintiff claims Defendant violated the ADEA and the CAA by failing to hire her for the "Senior Communications Specialist position and the Legislative Affairs Specialist position" she applied to in 2023 (Count I) and for retaliating against her "by failing to interview and/or promote [her] for the vacant positions at the AOC in 2023" and by "stripping away" many of her work responsibilities (Count II). ECF No. 9 ¶¶ 69, 80–82. Defendant moves to dismiss, arguing that the Court either lacks jurisdiction or that Plaintiff has failed to state a claim. ECF No. 12. As explained below, the Court agrees that all but one of Plaintiff's claims fail.

**A.     Age Discrimination (Count I)**

In her opposition to Defendant's motion, Plaintiff asserts that her amended complaint alleges that the AOC discriminated against her because of her age by refusing to hire her for five positions: the internal LAS position, the external LAS position, the 2023 LAS position, the SCS position, and the SLAS position. ECF No. 14 at 9.[2] The Court will dismiss Count I except to the extent it is based on Plaintiff's allegations related to the 2023 LAS position.

**1.     Count I Does Not Allege Discrimination Claims Relating to the Internal and External LAS Positions**

Though Plaintiff argues in her opposition to Defendant's motion to dismiss that she is challenging her non-selection for the internal and external LAS positions, her operative complaint

---

[2] As for the sixth—the July SCS position—Plaintiff has expressly abandoned any claim of non-selection. ECF No. 14 at 9. Courts may properly dismiss claims when litigants "explicitly concede" or abandon them. *Johnson v. District of Columbia*, 725 F. Supp. 3d 62, 67 (D.D.C. 2024) (quoting *Fleming v. Medicare Freedom of Info. Grp.*, No. 15-cv-1135, 2019 WL 6330719, at *2 (D.D.C. Oct. 24, 2019)). In response to Defendant's argument that the Court lacks subject-matter jurisdiction over this claim, Plaintiff conceded that she was no longer "litigating this claim in this Court." ECF No. 14 at 9. So to the extent Count I is based on Plaintiff's claims about the July SCS position, the Court will dismiss it for lack of subject-matter jurisdiction. *Johnson*, 725 F. Supp. 3d at 67.

raises no such claims. Plaintiff "cannot amend [her] complaint by the briefs in opposition to a motion to dismiss." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014). And where a count alleges that only some of a defendant's actions were illegal, a plaintiff may not make additional claims in her opposition. *Id.*

Here, Count I is clear. Plaintiff alleges that, "[i]n *2023*, [she] applied for the Senior Communications Specialist position and the Legislative Affairs Specialist position." ECF No. 9 ¶ 69 (emphasis added). She also alleges that she was told she "was not selected for *these* positions"—that is, "the positions sought" in 2023—because she lacked speechwriting and appropriations experience. *Id.* ¶¶ 69–70 (emphasis added). But Plaintiff does not allege that she was not interviewed for the internal and external LAS positions because she lacked speechwriting and appropriations experience. Those allegations are limited to the SCS and SLAS positions, both of which she applied for in 2023. *Id.* ¶¶ 46, 49, 55, 57. Finally, Plaintiff concludes that "[b]ut for Defendant's discriminatory actions, the Plaintiff would have been offered the positions *that she applied to in 2023*." *Id.* ¶ 71. So Count I is limited to challenging Plaintiff's non-selection for the positions she applied to in 2023.

The internal and external LAS positions are thus not covered by Count I because Plaintiff applied to them in 2022.[3] ECF No. 9 ¶¶ 28–33. Indeed, Plaintiff expressly notes that her complaint "discussed her 2021 *and 2022 actions* as 'background evidence.'" *Id.* at 4 n.1 (emphasis added). So Plaintiff may not bring these new claims through her opposition to Defendant's motion to dismiss. *Kingman Park Civic Ass'n*, 27 F. Supp. 3d at 165 n.10.

---

[3] Defendant argues that Plaintiff never even alleged that she applied for the external LAS position. ECF No. 15 at 16. But she does allege that she was told that she was not selected for the position on December 5, 2022. ECF No. 9 ¶ 32. Based on this, it is reasonable to infer that Plaintiff applied for the position before that date.

### 2. Count I Plausibly Alleges That Defendant Discriminated Against Plaintiff Regarding the 2023 LAS Position

In contrast, Plaintiff has stated a claim related to the 2023 LAS position. Though Defendant argues that Plaintiff has not adequately shown that Defendant's nondiscriminatory reason for not hiring her was pretextual, the Court disagrees. Plaintiff has plausibly alleged that her non-selection was because of her age, and she has not pleaded herself out of court by alleging so much factual detail that an inference of discrimination is unreasonable.

As mentioned above, Plaintiff brings her claims under the CAA, which "extends coverage of the ADEA to [AOC] employees." *Brown v. Hayden*, No. 18-cv-2561, 2020 WL 6392746, at *16 (D.D.C. Nov. 2, 2020); *see also* 2 U.S.C. § 1301(a)(3)(F). Under the ADEA, employers may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . age." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

To defeat a motion to dismiss, a plaintiff need not allege facts establishing a prima facie case of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). Instead, the plaintiff must merely "present facts that give rise[] to an inference of discrimination." *Hill v. Bd. of Trs. of Univ. of D.C.*, 146 F. Supp. 3d 178, 184 (D.D.C. 2015) (alteration in original) (quotation and internal quotation marks omitted). "[A]t the motion-to-dismiss stage, the guiding lodestar is whether, assuming the truth of the factual allegations, taken collectively, . . . the inferences of discrimination drawn by the plaintiff are reasonable and plausibly supported." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017). This is a low bar, and "the factual detail required to survive a motion to dismiss can be quite limited." *Hill*, 146 F. Supp. 3d at 184. For example,

8

the Supreme Court has held that a complaint states a claim for age discrimination when it "detail[s] the events leading to [the adverse employment action], provide[s] relevant dates, and include[s] the ages . . . of at least some of the relevant persons involved with [the adverse action]." *Swierkiewicz*, 534 U.S. at 514.

Plaintiff has plausibly alleged that the AOC and its employees discriminated against her because of her age by not selecting her for the 2023 LAS position. As in *Swierkiewicz*, Plaintiff's "complaint detail[s] the events leading to [her non-selection], provide[s] relevant dates, and include[s] the ages . . . of at least some of the relevant persons involved with" her non-selection. 534 U.S. at 514.[4] She alleges that her application to the position was part of a pattern of non-selections; that she was interviewed for the position on February 10, 2023; that Deputy Director Franco explained why she was not selected on March 13, 2023; and that Defendant ultimately hired Benjamin Gruenbaum, who is about 15 years younger than Plaintiff. ECF No. 9 ¶¶ 32–33, 40–41. That Plaintiff was rejected in favor of someone "substantially younger than [her] is a . . . reliable indicator of age discrimination," even if that other person also falls within the ADEA's protected class. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

Defendant does not argue that Plaintiff has not pleaded sufficient facts to make her claim plausible. On the contrary, Defendant argues that Plaintiff has pleaded *too much*. Citing cases like *Sparrow v. United Air Lines, Inc.*, Defendant argues that Plaintiff has "plead[ed] [her]self out of court by alleging facts" that make an inference of discrimination implausible. 216 F.3d 1111, 1116 (D.C. Cir. 2000). According to Defendant, Plaintiff's discrimination claim for the 2023 LAS position is implausible because Plaintiff herself alleged that Defendant refused to select her for the

---

[4] Though *Swierkiewicz* predates *Bell Atlantic Corp. v. Twombly*, in *Twombly*, the Supreme Court reaffirmed *Swierkiewicz*. *Twombly*, 550 U.S. at 569–70; *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015).

9

job for a nondiscriminatory reason, which she then purportedly failed to rebut. But Plaintiff's allegations do not go as far as Defendant suggests. True, Plaintiff alleges that Deputy Director Franco told Plaintiff that she was not selected for the role because "she lacked legislative affairs experience." ECF No. 9 ¶ 41. But she also alleges that she *does* have a "substantial amount of legislative affairs experience," implicitly rejecting that reason as pretextual. *Id.* ¶ 42. At this stage of the case, the Court cannot now conclude that Plaintiff has "plead[ed] [her]self out of court." *Sparrow*, 216 F.3d at 1116.

For these reasons, Plaintiff has plausibly alleged that the AOC and its employees discriminated against Plaintiff in failing to select her for the 2023 LAS position.

### 3. Count I Does Not State a Discrimination Claim Regarding the SCS Position

Unlike with the 2023 LAS position, Plaintiff has not plausibly alleged that Defendant discriminated against her when she was not selected for the SCS position. She alleges that she interviewed for the position on April 24, 2023, that she was rejected on May 24, 2023, and that, "[u]pon information and belief, this position was awarded to Erin Nelson[,] who is in her 30s or 40s." ECF No. 9 ¶¶ 46–47. And she also alleges that Deputy Director Franco told her that she was not selected because she needed "to improve her answer to the interview question on 'experience with speechwriting for a principal.'" *Id.* ¶ 49.

Defendant argues that Count I does not raise a plausible inference of age discrimination. Unlike with the 2023 LAS position, Defendant points out, Plaintiff alleges that the position was given to a younger woman only "[u]pon information and belief." ECF No. 9 ¶ 47. According to Defendant, while the D.C. Circuit permits pleading on information and belief in some cases, it "require[s] that the allegations based on information and belief 'be accompanied by a statement of

10

the facts upon which the allegations are based.'"[5]  *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)).  Plaintiff's complaint contains no statement of facts that would support the allegation that the AOC selected Erin Nelson for the SCS position or that she "is in her 30s or 40s." ECF No. 9 ¶ 47.  And nothing in the amended complaint would permit the Court to reasonably infer those allegations.  *Kareem*, 986 F.3d at 866; *see also Shaffer v. Zaid*, No. 20-cv-2492 (CRC), 2021 WL 4399580, at *7 (D.D.C. Sept. 27, 2021).  Indeed, the complaint says nothing about Erin Nelson beyond this information-and-belief allegation.  Thus, Defendant argues, the Court is entitled to "not rely[] on [t]his assertion."  *Mahoney v. U.S. Capitol Police Bd.*, 566 F. Supp. 3d 22, 28 (D.D.C. 2022).

Defendant continues that, stripped of this unsupported information-and-belief allegation, the complaint alleges only that Plaintiff applied, but was not hired, for the SCS position.  But of course, to state a plausible discrimination claim, she must provide more than a mere allegation of an adverse employment action; she must also plausibly allege that she suffered discrimination because of her age.  *Baloch*, 550 F.3d at 1196.  Without the inference that could be drawn had Plaintiff properly alleged that the AOC hired a younger person, she is left to rest on her "conten[tion]" that Deputy Director Franco's reason for not hiring her was "pretextual."  ECF No. 9 ¶ 50 (emphasis omitted).  But Plaintiff's "[m]ere suspicions about motive will not suffice to create an inference of discrimination."  *Mbulu v. Bureau of Nat'l Affs., Inc.*, No. 04-cv-1540 (JDB), 2006 WL 469971, at *8 (D.D.C. Feb. 28, 2006).

Plaintiff does not dispute Defendant's reading of the D.C. Circuit's information-and-belief

---

[5] While the Circuit originally tied this doctrine to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), *Kowal*, 16 F.3d at 1279 n.3, it appears to have since expanded the doctrine beyond that limited circumstance, *Kareem*, 986 F.3d at 866 (applying this rule outside the Rule 9(b) context).

line of cases. Nor does she argue that the rest of her complaint still supports a reasonable inference of discrimination. Thus, the Court will "treat the[se] unaddressed arguments as conceded." *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014). So to the extent that Count I alleges non-selection for the SCS position, it must be dismissed.

In response, Plaintiff argues that she has stated a claim because Erin Nelson's LinkedIn profile shows that she was hired for the SCS position and that she is 18 years younger than Plaintiff. ECF No. 14 at 11 & n.5. But on a Rule 12(b)(6) motion to dismiss, the Court's review is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Though Defendant does not "oppose consideration of the LinkedIn profile for the purpose of resolving the motion to dismiss," ECF No. 15 at 11 n.1, "parties cannot waive the application of the correct law or stipulate to an incorrect legal test," *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018). So Plaintiff may not refer to the LinkedIn profile to save her complaint's deficiencies any more than she may try to amend her complaint through her opposition to the motion to dismiss. *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *Kingman Park Civic Ass'n*, 27 F. Supp. 3d at 165 n.10.

Finally, even if she could rely on it, the LinkedIn profile does not do the work Plaintiff would like. Indeed, it contradicts Plaintiff's factual allegations in material ways. Plaintiff alleges that she applied for the SCS position in April 2023. ECF No. 9 ¶ 46. But Nelson's LinkenIn profile says that she is a Senior *Multimedia* Communications Specialist (not a Senior Communications Specialist), and that she started that position in *February* 2023, months before Plaintiff interviewed in April or was informed of her non-selection in May. *Compare* ECF No. 14-1 at 2 (LinkenIn profile), *with* ECF No. 9 ¶ 46–47. Undeterred that neither the job title nor the timeline

evidenced by the profile match her allegations, Plaintiff maintains that she is "unsure" if those discrepancies "make[] a difference." ECF No. 14 at 11 n.5. The Court does not share that uncertainty. Evidence that Nelson began a *different* job on a *different* timeline than those alleged in the complaint would not help support Plaintiff's allegations, even if she could rely on it.

For these reasons, in Count I, Plaintiff has not plausibly alleged that the AOC or any of its employees discriminated against her by not selecting her for the SCS position.

### 4. The Court Lacks Jurisdiction Over Plaintiff's Discrimination Claim Relating to the SLAS Position

Plaintiff's last non-selection claim is that Defendant discriminated against her when it failed to hire her for the SLAS position. But the Court lacks jurisdiction over this claim, so it must be dismissed.

To bring a civil suit for discrimination under the CAA, plaintiffs must follow the procedures established in that Act. These procedural requirements are jurisdictional, and the Court has no power over any claims that do not comply with the CAA's requirements. *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 705 (D.C. Cir. 2009). Relevant here, the CAA restricts the Court's jurisdiction to "civil action[s] commenced under" 2 U.S.C. § 1401. 2 U.S.C. § 1408(a). And § 1401 limits when employees may bring civil actions. Among other things, an employee may not file a civil action unless she has first timely filed an administrative charge with the OCWR as required by 2 U.S.C. § 1402.[6] *Id.* §§ 1401(b)(1), 1402(a)(1). And even if she has filed an administrative charge, the employee may only "file a civil action in a District Court . . . with respect to the violation alleged in the" administrative charge "during" "the 70-day period which

---

[6] The CAA refers to this as "fil[ing] a claim" with the OWCR. 2 U.S.C. § 1402(a)(1). To better distinguish this from the filing of a civil action, the Court refers to this preliminary step as filing an "administrative charge."

13

begins on the date the covered employee files the claim under section 1402." *Id.* § 1401(b)(1), (b)(3). In other words, the CAA limits a court's jurisdiction to civil actions that are "file[d]" "during" "the 70-day period" that begins on the day the employee submits an administrative charge with the OCWR. *Id.*; *see also Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 92 (D.D.C. 2011).

Unfortunately for Plaintiff, as set forth below, it is clear she did not "file a civil action" "with respect to" her SLAS claim "during" "the 70-day period which beg[an] on the date [she] file[d]" her related administrative charge with the OCWR. 2 U.S.C. § 1401(b)(1), (b)(3). Thus, the Court has no jurisdiction over that claim.

Plaintiff alleges that she filed her first age-discrimination charge with the OCWR on June 1, 2023. ECF No. 9 ¶ 3. Then, almost a month later, on June 28, Plaintiff "interviewed for" the SLAS position. *Id.* ¶ 55. Next, Deputy Director Franco told her she was not selected on July 19, and Plaintiff filed suit on July 31. *Id.* ¶¶ 5, 56. Though Plaintiff does not allege what claims she included in her first administrative charge, she could not have brought a claim with respect to the SLAS position for the obvious reason that she had neither been interviewed nor rejected for that job by the time she filed it. So the June 1, 2023, administrative charge could not have opened up a 70-day window to file a civil action with respect to the SLAS position.

Plaintiff filed a second administrative charge with the OCWR on August 2, 2023. Although she does not mention it in her complaint, Defendant includes this charge as an exhibit to its opposition, and the Court may consider it because it is relevant to the Court's jurisdiction and Plaintiff does not dispute that the exhibits accurately reflect that she filed an administrative charge that day. *Bailey*, 696 F. Supp. 2d at 71; ECF No. 12-3 at 13–21, 33–34. And that charge lays out Plaintiff's claim that the AOC discriminated against her by not selecting her for the SLAS position. ECF No. 12-3 at 33. So that charge *did* open a 70-day window—running from August 2, 2023, to

14

October 11, 2023—for Plaintiff to file a civil action relating to her non-selection for the SLAS position. But Plaintiff filed no such civil action during that window. Instead, she filed her complaint in this case on July 31, 2023, which was a few days *before* August 2. ECF No. 1. And she then amended her complaint on February 12, 2024, which was well *after* October 11. ECF No. 9. Even assuming that both actions constitute "fil[ing] a civil action," neither was done "during" this 70-day window. 2 U.S.C. § 1401(b)(1); *see also During,* Cambridge Dictionary of American English 267 (2000) (defining "during" as "at some time between the beginning and the end (of a period)"). So the Court lacks jurisdiction over claims included in the August 2, 2023, administrative charge, including the SLAS claim.

Plaintiff also alleges that, on October 21, 2023, she filed a third administrative charge with the OCWR "for discrimination and retaliation for acts occurring on or after April 2023"—which presumably would include her non-selection for the SLAS position. ECF No. 9 ¶ 6. Assuming that filing another administrative charge could have opened a second 70-day window to file a civil action for a claim relating to the SLAS position—which seems doubtful—this charge would have opened a window that began on October 21, 2023, and closed on January 2, 2024.[7] *See* 2 U.S.C. § 1401(b)(1), (b)(3). But for the reasons just discussed, Plaintiff did not file a civil action with respect to her SLAS claim during this window. Neither her July 31, 2023, complaint nor her February 12, 2024, amendment were filed "during" the 70-day period that began on October 21, 2023, so the Court lacks jurisdiction over the claims included in the October 21, 2023, administrative charge as well.

---

[7] Though 70 days from October 21, 2023, was December 30, 2023, that was a Saturday. When calculating a time period, however, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Because December 31 was a Sunday and January 1 was a legal holiday, the relevant period ended on January 2, 2024.

15

In response, Plaintiff argues that she timely filed her claim because she "mentioned" the SLAS position "in her initial complaint," meaning the claim "was filed in this Court as part of her initial filing on July 31, 2023." ECF No. 14 at 8. Even assuming that merely *mentioning* the SLAS position in her initial complaint counts as "fil[ing] a civil action . . . with respect to" her SLAS claim—which is also doubtful—the Court still lacks jurisdiction over that claim because, as just discussed, she did not file it within the statutory 70-day window. Instead, she filed it a few days before her August 2, 2023, administrative charge opened a window for her to file that claim. 2 U.S.C. § 1401(b)(1), (b)(3). That may seem like a technicality, but "[j]urisdictional provisions in federal statutes are to be strictly construed." *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C. Cir. 1986). And here, the CAA only permits, and the Court only has jurisdiction over, claims brought in civil actions filed during the relevant 70-day window. 2 U.S.C. § 1401(b)(1), (b)(3). Simply put, July 31, 2023, was not "during" either the period from August 2, 2023, to October 11, 2023, or the period from October 21, 2023, to January 2, 2024. Thus, Plaintiff's SLAS claim does not comply with the CAA's exhaustion and timeliness requirements, and the Court lacks jurisdiction over it.[8]

\*   \*   \*

For all these reasons, the Court will grant in part and deny in part Defendant's motion to dismiss Count I. The Court will grant the motion with respect to Count I except to the extent it is

---

[8] Plaintiff's concern about claim splitting is a red herring. *See* ECF No. 14 at 8–9. The rule against claim splitting bars a plaintiff from "maintain[ing] two actions on the same subject in the same court, against the same defendant at the same time." *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). Plaintiff provides no authority suggesting that the rule would have prevented Plaintiff from amending her complaint to add the SLAS claim within the statutory 70-day window. Alternatively, she could have simply filed this suit a few days later, or filed her August 2, 2023, administrative charge opening the 70-day window a few days earlier, so that her suit was filed within the window.

based on Plaintiff's allegations related to the 2023 LAS position.

**B.     Retaliation (Count II)**

In Count II, Plaintiff alleges that Defendant retaliated against her "by failing to interview and/or promote [her] for the vacant positions at the AOC in 2023" and by "stripping away" many of her work responsibilities. ECF No. 9 ¶¶ 80–82. The Court will dismiss that Count in its entirety.

To begin, the Court will dismiss Plaintiff's retaliation claims to the extent she has conceded or expressly abandoned them. As mentioned above, courts may properly dismiss claims when litigants "explicitly concede" or abandon them. *Johnson*, 725 F. Supp. 3d at 67 (quoting *Fleming*, 2019 WL 6330719, at *2). Here, even though Plaintiff's amended complaint alleges that AOC staff retaliated against her by removing her job responsibilities and failing to hire her for the vacant positions she applied for in 2023, ECF No. 9 ¶¶ 81–82, she concedes in her opposition to Defendant's motion to dismiss that her "pre June 2023 retaliatory claims were not administratively exhausted and we[re] only supplied . . . as background evidence," ECF No. 14 at 13. She then clarifies that she "is alleging retaliation" only for "her June 28, 2023, failure to promote, for the" SLAS position. *Id.* Accordingly, the Court will dismiss Count II for lack of jurisdiction to the extent it challenges anything besides Plaintiff's non-selection for the SLAS position. *Johnson*, 725 F. Supp. 3d at 67.

Plaintiff's concession that her retaliation claims are limited to the SLAS position also dooms the rest of Count II. As the Court has already discussed, the Court lacks jurisdiction over claims related to her non-selection for that position—whether sounding in discrimination or retaliation—because Plaintiff failed to "file" any such claim "during" "the 70-day period" following either her August 2, 2023, or her October 21, 2023, OCWR administrative charges. 2 U.S.C. § 1401(b)(1), (b)(3). Thus, the Court will dismiss that claim and Count II in its entirety.

17

## IV.     Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss, ECF No. 12, is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **DENIED** insofar as it seeks dismissal of Plaintiff's claim of age discrimination regarding her non-selection for the 2023 LAS position, as pleaded in Count I.  The motion is **GRANTED** as to Count I in all other respects and as to Count II.  Thus, it is further **ORDERED** that Count I is **DISMISSED IN PART** and Count II is **DISMISSED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 26, 2025